**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

ERIN CROCKWELL,

              Plaintiff,

        v.

LLOYD J. AUSTIN, III
*In his official capacity as United States
Secretary of Defense, et al.*,

              Defendant.

Civil Action No. 22-1649 (BAH)

Judge Beryl A. Howell

---

**MEMORANDUM OPINION AND ORDER**

Plaintiff Erin Crockwell was granted summary judgment on her Administrative Procedure Act ("APA"), 5 U.S.C. § 702 *et seq.*, challenges to the disability rating she received from the Department of Defense's ("DOD") Physical Disability Board of Review ("PDBR"), which affected the benefits she could receive after separating from the military. *Crockwell v. Austin*, Civil Action No. 22-1649 (BAH), 2024 U.S. Dist. LEXIS 55955, at *3 (D.D.C. Mar. 28, 2024) (denying defendant's motion for summary judgment, granting plaintiff's cross-motion for summary judgment, and remanding case to the PDBR for further consideration). Plaintiff subsequently moved for attorney's fees under the Equal Access to Justice Act ("EAJA"). Pl.'s Mot. Att'y Fees, ECF No. 34. For the reasons explained below, this motion is granted in part, and plaintiff is awarded $71,109.25 in attorney's fees.

**I.    BACKGROUND**

The facts underlying plaintiff's lawsuit are described in detail in the memorandum opinion granting summary judgment. *See Crockwell*, 2024 U.S. Dist. LEXIS 55955. The pertinent facts and procedural history relevant to the pending attorney's fees motion are described below.

1

A.      **Factual Background**

Plaintiff served on active duty in the U.S. Navy as a Mess Management Specialist (now known as Culinary Specialist) prior to her separation on February 11, 2009, due to a back injury. Compl. ¶ 15, ECF No. 1; *Crockwell*, 2024 U.S. Dist. LEXIS 55955, at *15-16; AR 415.  Her role required a great deal of bending and lifting, and plaintiff suffered from severe back pain, which persisted even after surgery to address it. *Crockwell*, 2024 U.S. Dist. LEXIS 55955, at *9-14; AR 35, 40, 54-55.  She received physical therapy and continued to work. *Crockwell*, 2024 U.S. Dist. LEXIS 55955, at *9-14; AR 29, 35, 53.  She was placed on her first period of limited duty due to her back injury in early 2007. *Crockwell*, 2024 U.S. Dist. LEXIS 55955, at *11; AR 58. In early 2008, she gave birth to twins after a period of prolonged bed rest. *Crockwell*, 2024 U.S. Dist. LEXIS 55955, at *13; AR 53, 57, 233, 240.  She returned to work after giving birth, though she reported serious pain at a doctor's visit in May, and the doctor deemed her "not . . . deployable." *Crockwell*, 2024 U.S. Dist. LEXIS 55955, at *13-14; AR 29, 233, 235.

In December 2008, the Navy's Physical Evaluation Board ("PEB") found her unfit for duty due to disability and assigned her a 20% disability rating. *Crockwell*, 2024 U.S. Dist. LEXIS 55955, at *15-16; AR 11-12.  That rating was below the 30% statutory threshold for plaintiff to be deemed medically retired and eligible for certain benefits—namely, disability retirement and military healthcare for her and her family.  10 U.S.C. § 1201(a)-(b).  Instead, upon her separation in February 2009, she only received a one-time lump-sum severance payment. *Crockwell*, 2024 U.S. Dist. LEXIS 55955, at *1; 10 U.S.C. § 1203(a).  Plaintiff subsequently sought disability compensation and benefits from the Department of Veteran Affairs ("VA"), which conducted another physical examination in May 2009. *Crockwell*, 2024 U.S. Dist. LEXIS 55955, at *16-18; AR 5, 422, 568-59.  The VA recommended a 40% disability rating based on her range of motion measurements and pain assessments. *Crockwell*, 2024 U.S.

Dist. LEXIS 55955, at *17; AR 432-34.  This disability rating assessment remained constant

over four years of appointments.  *Crockwell*, 2024 U.S. Dist. LEXIS 55955, at *18-19; AR 463,

465.

At that point, plaintiff applied to the PDBR for an increase in her prior PEB disability

rating of 20%, but the PDBR recommended "no re-characterization of [plaintiff's] disability and

separation determination.  *Crockwell*, 2024 U.S. Dist. LEXIS 55955, at *19; AR 6-7.  The PDBR

accorded little weight to the VA determination because (1) that determination did not mention

use of a goniometer to measure range of motion, (2) the subjective pain responses in her VA

examination were not consistent with other observations such as normal gait, and (3) there was

no record of recurrent injury or development in explanation of the more marked impairment of

her disability.  *Crockwell*, 2024 U.S. Dist. LEXIS 55955, at *21-22; AR 4-6.  The Assistant

Secretary of the Navy accepted the PDBR's recommendation.  *Crockwell*, 2024 U.S. Dist.

LEXIS 55955, at *24; AR 1-2.  Plaintiff then filed the lawsuit underlying this dispute, arguing

that the Navy's determination was arbitrary and capricious, in violation of the APA.  *Crockwell*,

2024 U.S. Dist. LEXIS 55955, at *2-25; Compl. ¶¶ 50-53.

**B.    Procedural Background**

In March 2024, plaintiff was granted summary judgment because "the PDBR's decision

giving less weight to plaintiff's May 2009 VA exam's findings, in favor of her 2007 physical

therapy and 2008 neurosurgical exams, each of which was marked by limitations the PDBR

failed adequately to consider, was arbitrary, capricious and unsupported by substantial

evidence." *Crockwell*, 2024 U.S. Dist. LEXIS 55955, at *24-25.  The PDBR did not "reasonably

reflect upon the information contained in the record and grapple with contrary evidence—

disregarding entirely the need for reasoned decisionmaking." *Id.* at *29 (quoting *Fred Meyer*

*Stores, Inc. v. NLRB*, 865 F.3d 630, 638 (D.C. Cir. 2017)).  PDBR did not "exercise[] its

3

judgment in a reasoned way." *Id.* at \*46 (quoting *Epsilon Elecs., Inc. v. U.S. Dep't of Treasury*, 857 F.3d 913, 927 (D.C. Cir. 2017)). The Court determined that each of the three justifications for the PDBR's decision were "seriously flawed" and the PDBR "fell short of its obligation under DOD Instruction 6040.44 not only to 'acknowledge the VA's ratings, but to evaluate and weigh them,' . . . in a fair and conscientious manner," contrary to law. *Id.* at 29, 45 (quoting *U-Ahk-Vroman-Sanchez v. U.S. Dep't of Def.*, No. 19-cv-3141 (APM), 2021 WL 394811, at \*7 (D.D.C. Feb. 4, 2021)). The Court then remanded plaintiff's disability determination to the PDBR. *Id.* at \*49-50.

A few months later, plaintiff filed for attorney's fees, requesting $132,220.09 for 560.15 hours of work (the equivalent of 14 full-time work weeks) by her lawyers at Hunton Andrew Kurth LLP and at the National Veteran Legal Service Program. Pl.'s Mem. Supp. Mot. Att'y Fees ("Pl.'s Mem.") at 1, 10, ECF No. 34-2.[1]  Defendant opposed, contending that DOD's position was "substantially justified," such that EAJA barred an attorney's fees award, and criticizing plaintiff for seeking "outrageously unreasonable" fees that were "plainly excessive" and for non-compensable work, identifying specific categories of work that should not be compensated, in addition to challenging the quantity of hours in the compensable categories. Def.'s Opp'n Mot. Att'y Fees ("Def.'s Opp'n") at 8, 13-23, ECF No. 37.  Some of defendant's critiques hit home since, in reply, plaintiff revised her fee request, shaving off about $42,000 to ask for $89,947.52 for 369.85 hours of work, eliminating from her request the categories of hours that defendant challenged as non-compensable and reducing the requested hours in the remaining categories. Pl.'s Reply Supp. Mot. Att'y Fees ("Pl.'s Reply") at 15, ECF No. 38.

---

[1]     Plaintiff lists different amounts for the total fee request award, citing both $132,220.09 and $136,228.48, *see* Pl.'s Mem. at 1, 10, but, since the requested amount is revised on reply, the precise amount of her original request is irrelevant.

## II.    LEGAL STANDARD

The EAJA authorizes a court to "award to a prevailing party" attorney's fees and expenses "incurred by that party in a civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The government bears the burden of showing substantial justification or special circumstances. *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1173 (D.C. Cir. 2005). If the court determines that a fee award is warranted, the plaintiff bears the burden of establishing the reasonableness of the requested fee award. *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004). The fee award is derived by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court, "in its discretion, may reduce the amount to be awarded . . ., or deny an award, to the extent that the prevailing party . . . unduly and unreasonably protracted the final resolution of the matter in controversy." 28 U.S.C. § 2412(d)(1)(C). The fee award may also be reduced, in the court's discretion, to ensure the plaintiff is not reimbursed for more than the number of hours reasonably expended on the litigation. *See Role Models Am.*, 353 F.3d at 970, 973.

## III.    DISCUSSION

Defendant does not contest that (1) plaintiff is statutorily eligible for fees based on her net worth, Pl.'s Mot. for Fees, Decl. of Erin Crockwell ¶ 2, ECF No. 34-4, (2) she is the prevailing party, (3) $243.20 an hour is a reasonable hourly rate for legal services, and (4) no special circumstances preclude an award. *See* Def.'s Opp'n at 4. Plaintiff also no longer is requesting fees for time spent on post-decision remand briefing, the joint appendix, error correction, conferrals with opposing counsel, and clerical tasks. Pl.'s Reply at 10-11. The

remaining areas of dispute are thus whether defendant's position was substantially justified and whether plaintiff's request of fees for 369.85 hours of work—*i.e.*, 60 hours for the complaint and 309.85 for the summary judgment briefing—is reasonable. Given that defendant's position was not substantially justified, plaintiff is eligible for fees under the EAJA. Plaintiff's motion is granted in part with a 25 percent reduction to a portion of the final requested fee award, based on entries in plaintiff's time log that lack sufficient precision to assess their reasonableness.

### A.      Substantially Justified

The government has the burden of showing the reasonableness of both its litigation position and the agency's actions underlying the litigation. *Role Models Am.*, 353 F.3d at 967. The court reviews both together, making "only one threshold determination for the entire civil action." *Comm'r, INS v. Jean*, 496 U.S. 154, 159 (1990). A position is substantially justified "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Role Models Am.*, 353 F.3d at 967 (quoting *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988)). In determining whether a position has a reasonable basis in law and fact, the court must "do more than explain, repeat, characterize and describe the merits . . . decision." *Taucher*, 396 F.3d at 1174 (quoting *Halverson v. Slater*, 20 F.3d 1205, 1209 (D.C. Cir. 2000)). The government "can lose on the merits and nevertheless be found to have taken a substantially justified position." *Id.* at 1173. This means that the court must "analyze *why* the government's position failed in court," "guard[ing] against being 'subtly influenced by the familiar shortcomings of hindsight judgment.'" *Id.* at 1173-74 (emphasis in original) (second passage quoting *Beck v. Ohio*, 379 U.S. 89, 96 (1964)).

Whether an agency decision found to be "arbitrary and capricious" is nonetheless substantially justified "depends on what precisely the court meant by 'arbitrary and capricious.'" *F.J. Vollmer Co., Inc. v. Magaw*, 102 F.3d 591, 595 (D.C. Cir. 1996). That an agency failed to

consider some factor may not warrant a finding that a position is not substantially justified, but

an agency's failure to enforce a rule that plainly applied "renders it much more likely that the

Government's action was not substantially justified." *Id.* (quoting *Wilkett v. ICC*, 844 F.2d 867,

871 (D.C. Cir. 1988)).

Here, regardless of the government's position in litigation, the government cannot

substantially justify the agency's position below.  The VA consistently assigned plaintiff a 40%

disability rating, and when revisiting disability determinations, the PDBR is required to consider

any VA disability ratings—specifically comparing them to the PEB rating and analyzing the

variance.  DoD Instr. 6040.44, Enclosure 3, § 4(a)(5) (2015).  While the agency ostensibly

compared the VA disability rating to the PEB rating, its three justifications for according the VA

examination less weight (relative to other examinations) and instead affirming the 20% rating

were "seriously flawed" and had no reasonable basis in law or fact.  *Crockwell*, 2024 U.S. Dist.

LEXIS 55955, at *30; *see* Def.'s Opp'n at 6-7 (pointing out these three justifications).

First, the PDBR seemingly concluded that the VA examination did not use a goniometer,

which is "indispensable" to measure "limitation of [range] of motion."  AR 5, 568-69; 38 C.F.R.

§ 4.46 (establishing that goniometers should be used by the VA in measuring range of motion).

There was no basis in fact for this conclusion, however.  The VA examination write-up simply

did not mention use of a goniometer, *see Crockwell*, 2024 U.S. Dist. LEXIS 55955, at *31, but

provided critical measurements on motion range in degrees suggesting that a goniometer *was*

used, *see* AR 569.  Ironically, the PDBR relied more heavily upon a 2007 physical therapy

examination where range of motion was measured in percentages, not degrees, suggesting a

goniometer was not used there.  AR 4-5.  PDBR did not even note this deficiency.  *See id.*;

*Crockwell*, 2024 U.S. Dist. LEXIS 55955, at *41-42.  The percentage measurements relied upon

by the PDBR were also seemingly inconsistent with 38 C.F.R. § 4.71, which provides that

disability ratings for spine disabilities must correspond to specific range of motion measurements

in degrees.  Further, the PDBR relied more on a 2008 neurosurgical evaluation that did not

include any range of motion measurements at all.  AR 6.  The decision to rely on these

examinations, given their deficiencies, rather than the 2009 VA examination, was not

substantially justified.

Second, the PDBR found an inconsistency between plaintiff's pain responses and limited

range of motion, as found by the VA examiner, and her "slow, but normal gait" documented in

the same examination.  AR 5-6.  Yet, the PDBR offered no explanation as to why those two

observations were inconsistent.  *Id.*; *see Crockwell*, 2024 U.S. Dist. LEXIS 55955, at *35-36.

The VA examiner clearly did not find them to be so.  Such an unsupported conclusion cannot be

substantially justified.

Third, the PDBR noted that no "record of recurrent injury or other development in

explanation of the more marked impairment reflected by the VA measurements," AR 5, but that

is clearly contradicted by the record.  Plaintiff was placed on bed-rest for pre-term labor,

delivered twins, and then returned to work reporting worsening pain.  AR 5, 53, 233-34.  The

PDBR discounted those events because the PDBR found that the evaluation after the birth was

"complete and normal," despite acknowledging her worsening back pain, and due to the lack of

range of motion "evaluations in the record from that time period."  AR 5-6.  Those findings,

however, were clear factual error.  The examination in the spring of 2008, after the birth of the

twins, specifically mentions her continued back pain, AR 234-37, and the May 2009 evaluation,

just a year later, provided range of motion evaluations, AR 569.  The PDBR relied more heavily

on earlier examinations from 2007 and 2008, despite the 2009 VA examination's closer

proximity to the date of her separation. *See* AR 5, 53. Moreover, even setting aside the

childbirth, the degenerative nature of plaintiff's back injury alone, *see* AR 4-5, 235 (noting the

diagnosis of degenerative disc disease), explains the more severe impairment over time. The

PDBR's skepticism of her more marked impairment lacks any basis in fact. Such a clear

contradiction of the facts in the record defeats defendant's argument that PDBR's errors amount

to "judgment calls" or reasonable differences of opinion. Def.'s Opp'n at 7.

###### B.       Amount of Hours

Having determined that plaintiff is eligible for a fee award, the number of hours for

which plaintiff requests reimbursement is considered next. The plaintiff must establish the

number of hours reasonably expended on the litigation with documentation of "sufficient detail

and probative value to enable the court to determine with a high degree of certainty that such

hours were actually and reasonably expended." *Role Models Am.*, 353 F.3d at 970 (quoting *In re*

*Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (per curiam)). At a minimum, this requires "an

itemized statement from any attorney or expert witness representing or appearing in behalf of the

party stating the actual time expended and the rate at which fees or other expenses were

computed." 28 U.S.C. § 2412(d)(1)(B).

A fee award should reflect the number of hours that would be properly billed to one's

client and not ones that are "excessive, redundant or otherwise unnecessary," *Hensley*, 461 U.S.

at 434, indicative of "duplicative, unorganized, or otherwise unproductive effort," *Environmental*

*Defense Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993) (quoting *Jordan v. Department*

*of Justice*, 691 F.2d 514, 518 (D.C. Cir. 1982)). To discourage overbilling, a court may "deny in

its entirety a request for an 'outrageously unreasonable'" fee amount, or it may reduce the award

below what would be the reasonable amount. *Reilly*, 1 F.3d at 1258. In reducing the hours—

either to approximate the reasonable amount or to punish plaintiff by awarding only fees below

that amount—the court "necessarily has discretion in making [an] equitable judgment." *Hensley*,

461 U.S. at 436-37. "There is no precise rule or formula." *Id.* at 436.

To assess whether the time is reasonable or excessive, the court must be able to determine

how much time is spent on each task. *In re Sealed Case*, 890 F.2d 451, 455 (D.C. Cir. 1989).

Block billing, though not *per se* prohibited, strains this process, often forcing the court to

estimate how much time is allocated to each task. *See Role Models*, 353 F.3d at 971; *In re*

*Olson*, 884 F.2d at 1428-29. That difficulty is compounded where the descriptions of the various

tasks—combined in the single entry—are themselves unspecific, failing to identify the subject

matter or the activity with sufficient specificity. "For example, billing entries for meetings and

telephone conferences where 'no mention [was] made of the subject matter' are insufficient."

*Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 463 F. Supp. 3d 11, 19-20 (D.D.C. 2020)

(alterations in original) (quoting *In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir. 1990)); *Bennett v.*

*Castro*, 74 F. Supp. 3d 382, 406 (D.D.C. 2014); *Am. Wrecking Corp. v. Sec'y of Lab.*, 364 F.3d

321, 329 (D.C. Cir. 2004). In *Role Models*, the D.C. Circuit held that "numerous entries in

which attorneys billed simply for 'research' and 'writing,' or for time spent in teleconferences or

meetings . . .[,] the purposes of which [we]re not provided" were inadequate. 353 F.3d at 971.

Likewise, in *Michigan v. EPA*, the Court explained that where a billing entry lacks the who and

what of a conference call, it "fails to provide the court with any basis to determine . . . that the

hours billed were reasonable." 254 F.3d 1087, 1093 (D.C. Cir. 2001) (quoting *In re Donovan*,

877 F.2d 982, 995 (D.C. Cir. 1989)). On the other hand, more specific descriptions such as

"research and drafting of FOIA part of complaint" have been deemed sufficient. *Nat'l Ass'n of*

*Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1332 (D.C. Cir. 1982) (per curiam).

Concerns about excessive billing may be heightened in cases engaging many billing attorneys on a straightforward matter. *See Reyes v. U.S. Nat'l Archives & Recs. Admin.*, 356 F. Supp. 3d 155, 169-71 (D.D.C. 2018). In *Role Models*, the D.C. Circuit explained that "duplication of effort" may make hours "seem excessive." 353 F.3d at 972. There, the plaintiff provided no satisfactory explanation as to why "three senior attorneys" were needed to work on the same brief. *Id.*

Where a "large number of entries that suffer from . . . deficiencies," such as "inadequate documentation [and] failure to justify the number of hours sought," a "fixed reduction is appropriate." *Id.* at 973. In *Role Models*, hundreds of billing entries suffered from these issues, as well as inconsistencies and improper billing for non-reimbursable tasks, prompting the Court to reduce the award by 50 percent. *Id.* In *Pursuing America's Greatness*, plaintiff's hours were found to be less excessive than in *Role Models* but the entries lacked adequate descriptions and were lumped together in block billing, prompting the Court to reduce the fee by 15 percent. 463 F. Supp. 3d at 21; *see also Michigan v. EPA*, 254 F.3d at 1093, 1095 (reducing portion of fee award by 10 percent where "numerous entries concerning meetings and conferences" were "devoid of any descriptive rationale for their occurrence" and reducing awarded hours for working on the opening brief by 50 percent because the requested amount was "unduly high"); *Bennett*, 74 F. Supp. 3d at 406 (reducing fee award by 10 percent where "several dozen [entries] lack[ed] adequate subject-matter descriptions, and a handful more [we]re lumped together with activities that might not warrant reimbursement").

Plaintiff provided an itemized log of hours, which she argues are reasonable given the length of pendency of this case and the favorable result obtained. Pl.'s Mem. at 10; Ex. 7 ¶¶12-14, Decl. of Sami Khan, Attorney for Plaintiff, ECF No. 34-3. Defendant, on the other hand,

describes the number of hours reflected on these logs as "outrageous" and indicative of duplicative and unproductive efforts across an overstaffed team, given the relatively streamlined nature of the case with no discovery and a single round of summary judgment briefing. Def.'s Opp'n at 9-24. As examples, defendant points to an entry billing fifteen minutes to read a non-substantive, four-sentence email, *id.* at 13-14, and plaintiff's attorneys' practice of block billing with descriptions that are inadequate to assess the reasonableness of the time entries, *id.* at 9-13. For instance, an entry from May 10, 2023, reads "correspond re case," which does not adequately convey how the attorney spent his time. *Id.* at 12. Another one, from October 3, 2023, combines discrete tasks without indicating the breakdown of time for each: "Teleconference with team re defendant's reply to our cross motion for summary judgment; conduct research for brief in support of our cross motion for summary judgment." *Id.* at 10; Ex. 1 at 7 (defendant's color-coded log of plaintiff's attorneys' hours), Def.'s Opp'n, ECF No. 37-2. As a result, defendant insists, the entire fee award should be denied or, in the alternative, reduced by 90 percent. Def.'s Opp'n at 24.

After plaintiff's concessions on reply, the amount of hours spent on two activities remain at issue: 60 hours preparing the complaint (a reduction from the originally requested around 130 hours), and 309.85 hours for the summary judgment briefing (a reduction from the originally requested 331.85 hours). Pl.'s Reply at 11-12, 15. Deficiencies in plaintiff's attorneys' time entries, however, still make difficult assessing whether the remaining hours were all reasonably expended.

In particular, plaintiff's time entries for the complaint and summary judgment briefing are, in many cases, block-billed, containing separate tasks without specific time allocations, and are also, in many cases, insufficiently described. For example, several line entries from an

attorney, on June 2 through 5, 2023, ranging from 4.75 to 6.25 hours long combine the tasks

"draft cross motion for summary judgment" and "correspond and teleconference with attorneys

on the matter."  Ex. 1 at 5, Def.'s Opp'n; *cf. In re Sealed Case*, 890 F.2d at 455 ("This makes it

impossible for the court to verify the reasonableness of the billings, either as to the necessity of

the particular service or the amount of time expended on a given legal task.").  Additionally, as

evident in this example, plaintiff's counsel often fail to identify the people and subject matters

addressed in phone calls and teleconferences.  *See also* Ex. 1 at 4-9; *Pursuing Am.'s Greatness*,

463 F. Supp. 3d at 19-20; *Michigan v. EPA*, 254 F.3d at 1093.  The time log further includes

some entries with descriptions that are too vague to decipher, such as "begin preparing for the

AUSA's motion for summary judgment."  *See* Ex. 1 at 4.  Whether this involves a productive

task like preliminary research or brainstorming with other attorneys, or unnecessary make-work,

is unclear.  *Cf. Role Models*, 353 F.3d at 971.  Finally, the log includes countless entries with

broad, unspecific descriptors, such as "draft cross motion for summary judgment."  *See* Ex. 1 at

4-9.  While such a description may be appropriately specific for a smaller number of hours, the

large quantity expended here on such tasks—and the sizeable total figure, which amounts to

seven full-time work weeks of summary judgment briefing alone—warrant more detailed

descriptions to enable evaluation of whether the time was reasonably spent without duplicative

efforts or unproductive side quests.[2]

      Given the large number of vague and consolidated time entries, the Court cannot

eliminate improper entries piecemeal and instead must estimate an appropriate percentage

---

[2]     As defendant suggests, Def.'s Opp'n at 17, 24, the high number of hours may be due in part to the fact that a junior associate on plaintiff's *pro bono* team at Hunton Andrews prepared first drafts of briefing.  Newer attorneys may be less efficient and require more supervision than more experienced ones, but this is not reason enough to allow an excessive fee award.  Plaintiff's counsel is obligated to request reimbursement only for hours "reasonably expended," and thus adjust its time logs accordingly.

reduction.  While 60 hours for the complaint seems reasonable, in light of the greater than 50

percent haircut defendants already conceded, an additional reduction to the remaining 309.85

hours for summary judgment briefing is necessary.  In line with other decisions in this District as

previously cited, ordering reductions ranging from 10 percent to 50 percent, the Court

determines in its discretion that an additional 25 percent reduction in the hours for summary

judgment briefing is appropriate.  Plaintiff's fee award is thus limited to 60 hours for the

complaint and 232.39 hours for the summary judgment briefing, which, at a rate of $243.20 per

hour, warrants an award of $71,109.25.

## IV.    CONCLUSION AND ORDER

Plaintiff is eligible for an award of attorney's fees under the EAJA, and an award of

$71,109.25 for 292.39 hours of work on this matter is reasonable.  It is hereby—

**ORDERED** that plaintiff's motion for attorney's fees is **GRANTED IN PART** and

**DENIED IN PART**; and it is further

**ORDERED** that plaintiff is awarded $71,109.25 in attorney's fees.

Date:  December 9, 2024

 

 

 

_____
**BERYL A. HOWELL**
United States District Judge